UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

10 & SCOTIA PLAZA, LLC,

      Plaintiff,

vs.                                           Case No. 11-15100

CITY OF OAK PARK,                       HON. AVERN COHN

      Defendant.

_____/

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (Doc. 15) AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 23)**

## I. INTRODUCTION

This is a Fifth Amendment takings case with claims under 42 U.S.C. § 1983.  Plaintiff

10 & Scotia Plaza (plaintiff) is suing defendant City of Oak Park (defendant) challenging the

constitutionality of a city ordinance and defendant's objections to the issuance of a State

of Michigan issued Specially Designated Merchant (SDM) license to plaintiff's potential

tenants.  A SDM license would allow the sale and distribution of beer and wine.  Plaintiff's

complaint is in eight counts, phrased as follows:

| | | |
|---|---|---|
| Count I | Violation of 42 USC 1983- Plaintiff's Application Does Not Violate Ordinance; | |
| Count II | Violation of 42 USC 1983- Selective Enforcement; | |
| Count III | Violation of Substantive Due Process; | |
| Count IV | Violation of Equal Protection Under the Law; | |
| Count V | Spot Zoning; | |
| Count VI | The Ordinance is Unconstitutionally Void For Vagueness; | |

 Count VII  The Ordinance Violates the Fifth Amendment of the United States Constitution as it Protects Private Interests; and

 Count VIII  Express' Property Rights Have Been Taken Without Just Compensation in Violation of the Fifth Amendment.

Now before the Court are cross motions for summary judgment (Docs. 15, 23). For the reasons that follow, the Court will deny plaintiff's motion and grant defendant's motion. The takings claim will be dismissed without prejudice because it is not ripe for federal court review.

## II. BACKGROUND[1]

Plaintiff owns real property located at 10861 W. Ten Mile Road, Oak Park, Michigan. Plaintiff leases business space to different parties. Plaintiff has owned the property since 1983. When plaintiff acquired the property, Scotia Stop, Inc. (Scotia Stop) was an existing tenant. The space leased by Scotia Stop was less than 10,000 square feet.

Scotia Stop was selling beer and wine through a SDM license and liquor through a

---

[1]The Court originally set the dispositive motion cut-off date for May 23, 2012 (Doc. 6). On October 2, the Court held a status conference and issued an order that established new deadlines for (1) plaintiff to file a motion for summary judgment; (2) defendant to file a response; and (3) plaintiff to file a reply. Plaintiff filed a motion for summary judgment (Doc. 15) and defendant filed an answer in conjunction with a cross motion for summary judgment (Doc. 19). The Court directed defendant to file its response and motion for summary judgment separately. Defendant filed a response (Doc. 20) and a cross motion for summary judgment (Doc. 23). Plaintiff filed a reply (Doc. 22) and "Plaintiff's Objection to Defendant's Motion for Summary Judgment, Late Filing of Response to Plaintiff's Motion for Summary Judgment and Late Filing of an Undisputed Statement of Facts" (Doc. 26).

 Plaintiff argues that the Court's October 2 Order only authorized plaintiff to file a motion for summary judgment. Further, plaintiff says defendant's response was untimely. Although the Court's Order expressly provided a deadline for plaintiff to file a motion for summary judgment, defendant's cross motion for summary judgment filed in conjunction with the response was entirely proper. In addition, defendant's filing was timely. The reason it appears to be untimely on the docket is because the Court ordered defendant to bifurcate and re-file its response.

Specially Designated Distributor (SDD) license.  In 1999, Scotia Stop purchased a building across the street and moved its business.  Defendant rezoned Scotia Stop's new location for commercial use; Scotia Stop transferred its SDM license and continued to sell beer and wine through its SDM license and liquor through its SDD license.

After Scotia Stop vacated the space it leased from plaintiff, Scotia Express, LLC (Scotia Express) informed plaintiff that it was interested in leasing the space.  On October 8, 1999, Scotia Express submitted an application for a SDM license to the Michigan Department of Consumer and Industry Services Liquor Control Commission (MLCC).

On February 21, 2000, while Scotia Express' SDM license application was pending, defendant adopted Zoning Ordinance No. 0-00-415 (Ordinance) (Doc. 16-1, p. 11).  The Ordinance defined, among other things, certain regulated uses.  One such regulated use under the Ordinance was establishments with SDD or SDM licenses.   The Ordinance provided, in pertinent part,

> No establishment holding an SDD or SDM license from the Michigan Liquor Control Commission, and being less than 10,000 square feet of gross area, shall be located within 1,000 feet of or within the same shopping center as any other establishment holding an SDD or SDM license from the Michigan Liquor Control Commission and which is also less than 10,000 square feet of gross area. . . .

(Id. at p. 11).  The Ordinance provided for waivers of the locational provision if the following conditions were found to exist:

> (1) The proposed use will not be contrary to the public interest or injurious to nearby properties.

> (2) That the proposed use will not encourage the development of a blighted or "skid row" type area.

3

(3) That the establishment of an additional regulated use in the area will not be contrary to any program of neighborhood conservation, nor will it interfere with any redevelopment projects.

(4) That all applicable regulations and controls as contained in this ordinance will be observed.

(Id. at 12).

On May 31, 2000, defendant submitted to the MLCC an objection to Scotia Express' application for a SDM license. In the objection, defendant stated that Scotia Express' application should be denied because it was in violation of the Ordinance. Scotia Express and Scotia Stop would be within the prohibited 1,000 feet locational provision.

On April 11, 2000, Scotia Express' application was denied by the MLCC (Doc. 16-1, p. 6). The MLCC informed Scotia Express the following:

The commission finds that there are numerous letters and a petition of protest on file in opposition to the issuance of the subject Specially Designated Merchant license at the proposed location.

The Commission finds that the Oak Park City Council objects to the issuance of the Specially Designated Merchant license at the subject location inasmuch as the Planning Commission objected to a convenience store at the proposed site due to the proximity of a similar retailer, the residents from the adjacent neighborhood have voiced objections to allowing additional convenience stores selling beer, wine and/or liquor in the area inasmuch as the area is predominantly residential and is adequately served by similar retailers nearby.

The Commission finds that the Mayor of Oak Park has advised that the issuance of a new Specially Designated Merchant license to the applicant limited liability company would violate Oak Park City Ordinances.

(Id.). Accordingly, Scotia Express did not lease space from plaintiff. Plaintiff was unable to lease the space to any other entity in the business of selling beer and wine and/or liquor.

4

Plaintiff leased the space sought by Scotia Express to RMS Lifeline, Inc. (RMS), a medical facility, beginning in October of 2001. RMS did not require a SDM or SDD license for its business.

On March 7, 2005 the Ordinance was amended as it relates to regulated uses. The 2005 amendment is currently effective. The amended Ordinance regulated, among other things, "[e]stablishments with SDD and SDM licenses from the Michigan Liquor Control Commission" (Doc. 20-4, p. 2).[2] The Ordinance provided the following pertinent restrictions for regulated uses:

> The proposed regulated use is not located within 1,000 feet of any other regulated use, regardless of community boundaries. Establishments with SDD and SDM licenses from the Michigan Liquor Control Commission, greater than 10,000 square feet of gross floor area, and devoting less than ten percent of the gross floor area to sales regulated by the SDD and SDM license, are exempt from the spacing requirement between regulated uses.
>
> The proposed regulated use is not located within 500 feet of a school, park, or place of worship, regardless of community boundaries. Establishments with SDM licenses from the Michigan Liquor Control Commission, greater than 10,000 square feet of gross floor area, and devoting less than ten percent of the gross floor area to sales regulated by the SDM license, are exempt from this spacing requirement.

(Id.). The new Ordinance eliminated the ability to receive a waiver of the locational provisions.

On November 23, 2010, after RMS vacated the space it leased from plaintiff, Scotia Express again expressed an interest in leasing the property and applied to the MLCC for a SDM license.

---

[2] The older language of the Ordinance used the word "or" instead of the word "and."

5

On January 19, 2011, defendant objected to Scotia Express' application based on the Ordinance (Doc. 16-2, p. 5). Plaintiff says defendant's objection was based on the old language of the Ordinance, not the amended ordinance.

On March 10, 2011, the MLCC denied Scotia Express' application based on defendant's objection. Scotia Express appealed the decision; its appeal was denied (Doc. 16-2, pp. 7-11).

On May 24, 2011, Scotia Express appealed to defendant's Zoning Board of Appeals for a variance of the Ordinance; the appeal was denied (Doc. 16-3, p. 2).

Plaintiff says defendant's objections to Scotia Express' SDM license are intended to give Scotia Stop a competitive advantage.

### III. STANDARD OF REVIEW

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial. Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

6

## IV. DISCUSSION

### A. Standing

The Court must first determine whether it has jurisdiction to decide the case, i.e. whether plaintiff has standing to challenge the Ordinance. Lance v. Coffman, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits.") (citations omitted). Absent standing, the Court has "no business deciding legal disputes or expounding on law. . . ." Already, LLC v. Nike, Inc., ___ S.Ct. ___, 2013 WL 85300 (2013) (internal quotations omitted).

The United States Constitution "limits federal-court jurisdiction to actual cases or controversies." Green Party of Tenn. v. Hargett, 700 F.3d 816, 828 (6th Cir. 2012). The party invoking federal jurisdiction bears the burden of establishing standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Standing challenges the federal court's subject matter jurisdiction, and, thus, it may be raised at any time. Henderson v. Shinseki, 131 S.Ct. 1197, 1202 (2011). The Supreme Court requires three elements to establish minimum standing:

> First, the plaintiff must have suffered an "injury in fact" –an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or hypothetical[.]' " Second, there must be a causal connection between the injury and the conduct complained of– the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan, 504 U.S. at 560 (internal citations omitted) (alterations in original); see also Hargett, 700 F.3d at 828.

7

A plaintiff is required to satisfy each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of the litigation." Michigan v. Bay Mills Indian Comm., 695 F.3d 406, 411 (6th Cir. 2012) (quoting Lujan, 504 U.S. at 561). Thus, "[i]n response to a summary judgment motion," "the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" Lujan 504 U.S. at 561.

In addition to the above requirements, there are three prudential requirements a plaintiff must satisfy. City of Cleveland v. Ohio, 508 F.3d 827, 835 (6th Cir. 2007). First, "a plaintiff must assert his own legal rights and interests"; second, "the claim must be more than a generalized grievance"; and third, "in statutory cases, the plaintiff's claim must fall within the zone of interest regulated by the statute in question." Id. (citing Coyne v. Am. Tobacco Co., 183 F.3d 488, 494 (6th Cir. 1999) (internal quotations omitted).

Defendant argues that plaintiff does not have standing to challenge the Ordinance because it is asserting the rights of a third party, Scotia Express, who is not before the Court. Defendant's argument, based on the prudential standing requirements, is misguided. Plaintiff is not asserting the rights of Scotia Express; plaintiff has standing to raise claims as a property owner. See Loesel v. City of Frankenmuth, No. 08-11131-BC, 2009 WL 817402, at *11 (E.D. Mich. March 27, 2009). Further, the Sixth Circuit "has explicitly held that . . . an economic injury is sufficient to confer standing upon a party." Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, 470 F.3d 286, 294 (6th Cir. 2006), overruled on other grounds as recognized by Davis v. Prison Health Servs., 679 F.3d 433 (6th Cir. 2012) (citing Owen of Georgia, Inc. v. Shelby Cnty., 648 F.2d 1084, 1089

8

(6th Cir. 1981)).  Plaintiff's claimed injury is caused by the Ordinance and can be remedied by striking down the Ordinance as unconstitutional.  Plaintiff has standing.

### B. Challenge to the Ordinance

The Supreme Court has long recognized that zoning laws and regulations "must find their justification in some aspect of the police power, asserted for the public welfare." Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 386 (1926).  The question of "whether the power exists to forbid the erection of a building of a particular kind or for a particular use . . . is to be determined . . . by considering it in connection with the circumstances and the locality."  Id. at 388 (citation omitted).  Where the "validity of the legislative classification for zoning purposes [is] fairly debatable, the legislative judgment must be allowed to control."  Id. (citing Radice v. New York, 264 U.S. 292, 294 (1924)).

The Sixth Circuit has adopted from the Eleventh Circuit six categories of federal zoning claims:

> 1. Just compensation takings claim.  Plaintiff claims that the zoning applied to his land constitutes a taking of his property without just compensation in contravention of the Fifth Amendment, the remedy sought being the just compensation.
>
> 2. Due process takings claim.  Plaintiff claims that the zoning applied to his property goes too far and destroys the value of his property to such an extent that it amounts to a taking by eminent domain without due process of law.  The remedy sought is invalidation of the zoning regulation.
>
> 3. Arbitrary and capricious substantive due process claim. Plaintiff claims that the zoning regulation is arbitrary and capricious in that it does not bear a substantial relation to the public health, safety, morals, or general welfare.  Two further subcategories may be discerned under this heading: (a) facial and (b) as applied.

9

4. <u>Equal protection</u>.  Either based on suspect class, invoking strict scrutiny, or mere economic discrimination.

5. <u>Procedural due process</u>.  Although not discussed by the Eleventh Circuit, there is, of course, a fifth category where plaintiff claims deprivation of procedural due process.

6. <u>First Amendment</u>.  A category may also be defined when plaintiff claims that a First Amendment right such as freedom of speech or religion is violated by the zoning ordinance.

<u>Pearson v. City of Grand Blanc</u>, 961 F.2d 1211, 1215-16 (6th Cir. 1992).  Here, plaintiff raises categories 2-4.

## 1. Takings Claim

Counts VII and VIII of the complaint assert a takings claim.  Plaintiff claims that the Ordinance as applied to it destroys the value of its property and amounts to a taking.  This claim is not ripe for federal court review.  In order to assert a violation of the Fifth Amendment's Just Compensation Clause, after receiving a final administrative decision, plaintiff must have unsuccessfully attempted to obtain just compensation through the procedures provided by the State of Michigan.  <u>Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 195-97 (1985).  This requires first pursuing an inverse condemnation action in state court.  <u>Braun v. Ann Arbor Charter Twp.</u>, 519 F.3d 564, 569-570 (6th Cir. 2008).  Here, plaintiff has not shown that it has unsuccessfully attempted to obtain just compensation through state procedures.  Therefore, under <u>Williamson County</u>, the takings claim is not ripe for federal court review.  Counts VII and VIII will be dismissed without prejudice.

## 2. Substantive Due Process Claim

Count III of the complaint alleges that defendant's application of the Ordinance to plaintiff deprives it of substantive due process. Plaintiff says that the Ordinance, as applied to it, arbitrarily, capriciously, and unreasonably denies it the opportunity to engage in a legitimate business endeavor.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV. Substantive due process requires government action that is "rationally related to a legitimate state interest," which does not "deprive a plaintiff of a particular constitutional guarantee or shock the conscience." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 547 (6th Cir. 2012) (citing Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997)). In order to raise a due process claim, plaintiff must implicate "a constitutionally-protected property or liberty interest." Loesel, 2009 WL 817402, at *18. Defendant argues that plaintiff does not have a constitutionally-protected property interest because it does not have a SDM license. Defendant's argument, however, does not persuade. Plaintiff's property interest is not in a SDM license, but rather its interest in the economic use of its property. The Sixth Circuit has recognized that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." Pearson, 961 F.2d at 1217. Here, Plaintiff owns property that is subject to the Ordinance and is challenging the application of the Ordinance to its property. It has a constitutionally-protected property interest. This, however, does not necessarily mean that plaintiff's due process claim survives summary judgment.

The standard of review that applies in a substantive due process claim varies depending on whether the action challenged is administrative or legislative. "Where a

11

substantive due process attack is made on state <u>administrative</u> action, the scope of review by the federal courts is extremely narrow." <u>Id.</u> at 1221 (emphasis in original). The standard applied in this situation is a rational basis standard. <u>Id.</u> "To prevail, a plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the <u>strict</u> sense, meaning 'that there is no rational basis for the . . . [administrative] decision.'" <u>Id.</u> (citing <u>Stevens v. Hunt</u>, 646 F.2d 1168, 1170 (6th Cir. 1981) (emphasis and alterations in original)). The arbitrary and capricious standard does not allow federal courts to "sit as local boards of zoning appeals." <u>Id.</u> at 1222. Rather, "[t]his review is limited to determining whether the agency has paid attention to the evidence adduced and acted rationally upon it." <u>Id.</u> (citations omitted). Essentially, federal courts should "show great respect for the local authority's professional judgment." <u>Id.</u> (internal quotations omitted).

On the other hand, where "zoning <u>legislation</u> is subjected to substantive due process attack, the scope of review by the federal court is the same for any other legislation—even more deferential than for state administrative action." <u>Id.</u> at 1223. Essentially, when reviewing legislative acts, "the only permissible inquiry—absent equal protection, First Amendment or other such considerations—[is] whether the legislative action is rationally related to legitimate state land use concerns." <u>Id.</u> (citing <u>Curto v. City of Harper Woods</u>, 954 F.2d 1237, 1243 (6th Cir. 1992)).

Here, plaintiff is challenging defendant's objection to a SDM application as a violation of due process. Plaintiff's real challenge is to the Ordinance itself. Thus, the Court will apply the more deferential of the two standards of review applicable to zoning legislation. In order for plaintiff to prevail on the due process claim, plaintiff must show that

the 1,000 foot locational provision in the Ordinance is not rationally related to legitimate state land use concerns.  Plaintiff fails to make such a showing.[3]

The Ordinance explicitly states defendant's interest in regulating certain uses:

> It is recognized that there are some uses that, because of their very nature, have serious objectionable operational characteristics, particularly when concentrated in one area, and recognizing that such uses may have a deleterious effect upon adjacent areas, special regulation of these uses is necessary to prevent crime, protect the city's retail trade, maintain property values, and generally protect and preserve the quality of the city's neighborhoods and commercial districts.  These special regulations are itemized in this section.

(Doc. 23-4, p. 2).  Further, the Ordinance provides that establishments with SDD and SDM licenses, among other regulated uses, "are declared to be potentially detrimental and to have the possible effect of downgrading and blighting the surrounding neighborhood, particularly when concentrated in one area."  (Id.).  Thus, it is evident that the Ordinance is rationally related to legitimate state land use concerns.

The Sixth Circuit held that geographical zoning regulations are rationally related to legitimate state land use concerns in Bronco's Entm't. Ltd. v. Charter Tp. Of Van Buren, 421 F.3d 440 (6th Cir. 2005).  In Van Buren, plaintiffs Bronco's Entertainment, Ltd. and Rawsonville Land Company, Inc. (plaintiffs) brought a civil rights action against the Charter Township of Van Buren (Township) and the Michigan Liquor Control Commission, claiming that the Township's licensing and zoning ordinances violated the First and Fourteenth Amendments and prevented plaintiffs from obtaining a sexually oriented business licence

---

[3] Even if the Court applied the less deferential standard applicable to administrative agency decisions, plaintiff fails to show that the defendant's application of the locational provision in the Ordinance to plaintiff's property– through an objection to plaintiff's SDM application to the MLCC– was arbitrary and capricious.

to open a topless bar.  Id. at 443.  One of the issues before the court of appeals was whether the Township's geographic zoning regulations contained in an ordinance were constitutional.  Id. at 444.  As the court of appeals explained,

> The ordinance prohibit[ed] operation of a sexually oriented business within 1,000 feet of a church, a school, a residential zoning district, a lot or parcel in residential use, a public park, a child care facility, or another sexually oriented business.  It also prohibit[ed] sexually oriented businesses from being located within 500 feet of designated highways and thoroughfares.  Finally, the ordinance allow[ed] sexually oriented businesses only in districts zoned for "general industrial" or "airport" uses, and not in "general business" districts

Id. at 450.

The court of appeals reasoned that the Township's adoption of the ordinance was to combat the secondary effects of sexually oriented businesses, such as increased crime rates, reduced property values and other societal harms.  Id. at 451.  Further, using a higher standard required by the First Amendment, the court of appeals found the challenged ordinance to be narrowly tailored to serve a substantial government interest:

> The importance of the township's interest in combating the secondary effects of sexually oriented businesses is "not debatable."  Wojcik v. City of Romulus, 257 F.3d 600, 614 (6th Cir. 2001); see also Erie v. Pap's A.M., 529 U.S. 277, 296 (2000) (plurality opinion) ("The asserted interest [] . . . of combating the harmful secondary effects associated with nude dancing [is] undeniably important.").  And the ordinance applies only to "that category of establishments shown to produce the unwanted secondary effects," i.e., sexually oriented businesses.  Executive Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783, 796 (6th Cir. 2004) (internal quotation marks and brackets omitted).  The covered businesses are delineated in the ordinance, and plaintiffs have never argued that the ordinance's reach extends to mainstream bookstores or other establishments that are unlikely to create harmful secondary effects.

14

Id.

Plaintiff's substantive due process claim does not withstand scrutiny.  Like Van Buren, the Ordinance here is aimed at combating harmful secondary effects to the community.  See also Pearson, 961 F.2d at 1224 (upholding zoning challenge as rationally related to community traffic problems and over-commercialization of the area).  Thus, the Ordinance is rationally related to legitimate land use concerns.[4]  Summary judgment will be granted for defendant on the substantive due process claim.[5]

### 3. Equal Protection Claim

Count IV of the complaint alleges that plaintiff was denied equal protection under the law.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws" U.S. Const. amend. XIV.  The court in Loesel, supra, succinctly explained the law of equal protection claims in the context of challenges to zoning ordinances:

Traditionally, to establish an equal protection claim, a plaintiff

---

[4] Having found that the Ordinance validly addresses defendant's health, safety, and welfare concerns, plaintiff's claim of spot zoning fails.  Accordingly, defendant will be granted summary judgment on count V (Spot Zoning).

[5] Although plaintiff's papers state a violation of procedural due process, the complaint does not.  Notwithstanding, the facts do not support a procedural due process claim.  "Procedural due process claims are concerned not with the deprivation of a constitutionally protected interest in 'life, liberty, or property,' but depravation of those interests without due process of law."  Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 546 (6th Cir. 2012) (citation omitted).  Plaintiff does not seriously dispute that it was afforded procedural due process.  Its prospective tenant challenged the Ordinance and applied for a variance, having notice and the opportunity to be heard throughout the process.  At oral argument, plaintiff's counsel admitted that Scotia Express and plaintiff are commonly owned and even stated that he was at the public meeting himself when the Ordinance was adopted and was able to voice his concerns.

"must show that [he or] she is a member of a protected class and that [he or] she was intentionally and purposefully discriminated against because of [his or] her membership in that protected class." Jones v. Union Cnty., 296 F.3d 417, 426 (6th Cir. 2002) (citing Boger v. Wayne Cnty., 950 F.2d 316, 325 (6th Cir. 1991)). In this case, Plaintiffs have not alleged that they are members of a protected class.

Rather, Plaintiffs attempt to establish a "class of one" equal protection claim. A plaintiff who brings a "class of one" equal protection claim must show that (1) it was treated differently from others who are similarly situated and (2) there is no rational basis for the difference in treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Engquist v. Or. Dep't of Agriculture, ___ U.S. ___, 28 S.Ct. 2146, 2153 (2008). "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." Warren v. City of Athens, 411 F.3d 697 (6th Cir. 2005) (internal quotations omitted); Trihealth, Inc. v. Bd. of Comm'rs., Hamilton Cnty., Ohio, 430 F.3d 783, 788 (6th Cir. 2005) ("To prevail, [plaintiffs] must demonstrate that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the County's actions were irrational."). See, e.g., Romer v. Evans, 517 U.S. 620, 634-35 (1996) (finding that a state constitutional amendment lacked a rational basis because the amendment "seems inexplicable by anything but animus toward the class it affects"). By definition, a "conceivable" basis does not even have to have been articulated by the decionmaker at the time of the decision. Nordlinger v. Hahn, 505 U.S. 1, 9 (1992).

2009 WL 817402, at *14-15 (alterations in original).

Here, like Loesel, plaintiff attempts to establish a "class of one" equal protection claim. In order to do so, plaintiff must establish that (1) it was treated differently from others who were similarly situated and (2) there is no rational basis for the difference in treatment.

First, plaintiff says it was treated differently than others who were similarly situated.

16

Although they are within 1,000 feet of each other, plaintiff says the following business in the city are allowed to operate with SDM or SDD licenses:

>  Aldi and K-Mart;
>
>  7-Eleven, Euro-Food and Lincoln Convenient;
>
>  New 12 Chairs, Borenstein Books and Rite-Aid Pharmacy;
>
>  CVS Pharmacy and Farm Fresh Market;
>
>  Danny's Fine Wine and Light House Liquor;
>
>  BP Oak and Onyx Market; and
>
>  Pair's Food Store and Trend Express Market.

Plaintiff also says that Borenstein Books and Smokers Best Buy, two similarly situated businesses, were given variances under the Ordinance.

Defendant says plaintiff was not treated differently from other similarly situated businesses. Defendant says that the businesses plaintiff claims it is similarly situated to are, in fact, on different footing. In its brief, defendant clarifies,

>  Big Kmart, 7-Eleven, Hammerstein Light House Liquor, Oyx Market, Pairs Food, and Trend Express Market were existing holders of a SDM and/or SDD license when Ordinance 1929 was enacted on February 21, 2000, and, thus, were grandfathered in when the ordinance was enacted. Aldi, Euro-Food, Rite-Aid, CVS Pharmacy, and Farm Fresh Market are establishments exempted from the 1,000 foot spacing requirement because they are more than 10,000 square feet of gross area. Lincoln Convenient Shoppe, New 12 Chairs, and Borenstein's Books were located on property in Royal Oak Township that was part of an annexation or land transfer agreement to the City of Oak Park and, thus, were allowed to continue to operate as non-conforming licenses. Smoker's Best Buy now operates under the name of Danny's Fine Wines at the same address and was allowed a waiver to sell beer and wine under the Ordinance. The Ordinance enacted in 2005 does not allow for a waiver. In any event, neither Plaintiff nor

17

Scotia Express ever applied for a waiver.

(Doc. 29, p. 8) (citations to exhibits omitted).

Plaintiff is not similarly situated to the businesses it claims received differential treatment.  At the time the 2000 Ordinance was enacted, six of the businesses were existing holders of a SDM or SDD licence, and, therefore, were grandfathered and allowed to continue to operate with SDM or SDD licenses.  (Doc. 29-2, p.3).  At that time, neither plaintiff nor an existing tenant had a SDM or SDD license.  Rather, its potential tenant, Scotia Express, had an application for a SDM license pending.  Its prior tenant, Scotia Stop, had a SDM license, but transferred its business and the license attached to that business to another location.  Plaintiff is not similarly situated to the businesses that had existing SDM or SDD licenses at the time the 2000 Ordinance was enacted.

Five of the businesses that plaintiff says received different treatment are exempt from the 1,000 foot locational requirement because they are larger than 10,000 square feet of gross area.  (Doc. 29-2, p. 3).  Plaintiff, smaller than 10,000 square feet of gross area, is not similarly situated to these businesses.

Three businesses that received different treatment than plaintiff were previously located in Royal Oak Township and the city acquired the property on which the businesses were located (Doc. 29-2, pp. 3-4).  At the time the land was acquired by the city, the businesses operated with SDM or SDD licenses.  They were permitted to continue to operate using the licenses.  Plaintiff is not similarly situated these businesses.

Finally, Smoker's Best Buy, now Danny's Fine Wine, applied for special land use approval in January of 2004 asking for a waiver of the locational provision in the Ordinance (Doc. 29-2, p.4).  At that time, the 2000 Ordinance was in place, which allowed for waivers

18

of the locational provision if certain conditions were met.  The waiver was granted and Smoker's Best Buy was allowed to sell beer and wine that was not "high proof" (Id.).  Neither plaintiff nor its potential tenants applied for a waiver of the locational provision under the 2000 Ordinance.  The current Ordinance does not provide for waivers.  Plaintiff is not similarly situated to Danny's Fine Wine.

Even assuming that plaintiff is similarly situated to the above businesses, it cannot establish that there is no rational basis that defendant treated plaintiff differently than the other businesses.  Essentially, defendant allowed establishments who were grandfathered to bypass the Ordinance.  Plaintiff has not presented any evidence negating "every conceivable basis which might support" defendant's action and cannot demonstrate that the challenged action "was motivated by animus or ill-will."  See Athens, 411 F.3d 697.  In fact, plaintiff cannot negate defendant's express reason for treating the above businesses differently: they were already operating with SDM or SDD licences before the Ordinance existed.  Plaintiff relies merely on a naked assertion that defendant's actions were motivated by animus and ill-will; it has not proffered any evidence that supports its assertion.  Accordingly, defendant is entitled to summary judgment on the equal protection claim.[6]

### 4. Void for Vagueness Claim

Count VI of plaintiff's complaint claims that the Ordinance is unconstitutionally void for vagueness.  Specifically, plaintiff says that the Ordinance regulates "[e]stablishments

---

[6] Because defendant had a rational basis in the way it acted towards different businesses, plaintiff's claim of selective enforcement has no merit.  Defendant did not selectively enforce the Ordinance; it allowed certain businesses who were grandfathered to continue to operate with preexisting SDM or SDD licenses.  Thus, defendant will be granted summary judgment on count II (Selective Enforcement).

with SDD <u>and</u> SDM licenses from the Michigan Liquor Control Commission." (emphasis added). According to plaintiff, the use of the word "and" clearly means that the Ordinance does not regulate establishments unless they have both a SDM and SDD license. Notwithstanding, the use of the word "and," plaintiff says defendant is applying the Ordinance to its potential tenants that only want to operate with a SDM license. Thus, according to plaintiff, a person of ordinary intelligence would read the Ordinance differently than defendant has applied it.

The Supreme Court first explained how to determine if a government enactment is unconstitutionally vague in <u>Connaly v. Gen. Constr. Co.</u>, 269 U.S. 385 (1926). In <u>Connaly</u>, the Supreme Court stated that a government enactment is unconstitutionally void for vagueness if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." <u>Id.</u> at 391. More recently, the Supreme Court revisited the issue in <u>Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489 (1982). In <u>Hoffman Estates</u>, the Supreme Court stated that "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." <u>Id.</u> at 498 (citations omitted).

Essentially, the vagueness doctrine has two primary goals: "(1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement [by officials]." <u>White Oak Prop. Dev., LLC v. Wash. Tp., Ohio</u>, 606 F.3d 842, 847 (6th Cir. 2010) (citing <u>Ass'n of Cleveland Fire Fighters v. City of Cleveland</u>, 502 F.3d 545, 551 (6th Cir. 2007)) (alteration in original). "A vague law impermissibly delegates basic policy matters to [officials] for

20

resolution on an ad hoc and subjective basis." Id. (citation omitted) (alteration in original).

Here, the Ordinance is not void for vagueness. The specific language in question relates to the following regulated use: "[e]stablishments with SDD and SDM licenses from the Michigan Liquor Control Commission." Plaintiff says the word "and" creates a vagueness. Plaintiff's position is that the Ordinance does not regulate businesses with only SDM licences. Rather, the Ordinance regulates businesses with both SDD and SDM licenses. Defendant disagrees and says the Ordinance regulates businesses that have only one of the two licenses as well.

Defendant's reasonable interpretation of its own Ordinance is entitled to deference. Under Michigan law, ordinances and statutes are construed under the same principles. Walsh Const. Co. of Illinois v. City of Detroit, 257 F. Supp. 2d 935, 938 (E.D. Mich. 2003) (citing Macenas v. Vill. of Michiana, 433 Mich. 380, 397 (1989)). "When construing a statute, courts must first examine the plain language of the statute." Id. (citing Danse Corp. v. City of Madison Heights, 466 Mich. 175, 182 (2002)). If the statute is unambiguous, it must be applied as written; if there is any ambiguity, "a reviewing court is to give deference to a municipality's interpretation of its own ordinance." Id. (citation omitted). "[W]here the construction of the ordinance has been applied over an extended period of time, it is entitled to 'great weight.'" Id. (citation omitted). One court has likened the "great weight" standard to an arbitrary and capricious standard. Id.

When reading the Ordinance, it can reasonably be applied the way plaintiff interprets it. If plaintiff's interpretation governs, the Ordinance would only regulate establishments with both SDD and SDM licenses. However, defendant's interpretation of the Ordinance, which is also reasonable, is that it regulates establishments with SDD licences and

establishments with SDM licenses. The word "and" applies to the word "establishments." Although it may not have been as artfully written as plaintiff would like, the Ordinance is not void for vagueness. Defendant's reading of the Ordinance, which it has applied since the Ordinance was amended in 2005, is a reasonable interpretation that is entitled to "great weight." In other words, defendant's reading of the ordinance is not arbitrary and capricious. With the two primary goals of the vagueness doctrine in mind– ensuring fair notice to the citizenry and providing standards for enforcement by officials– the Court finds that, based on defendant's consistent application of the Ordinance since 2005, establishments have fair notice that the Ordinance regulates establishments with SDM or SDD licenses. Defendant is entitled to summary judgment on this claim.

### C. 42 U.S.C. § 1983 Claim

Count I of plaintiff's complaint asserts a claim under 42 U.S.C. § 1983 based on its interpretation of the Ordinance and its position that the Ordinance is inapplicable to the situation at hand. This claim fails for two reasons. First, the Court has already determined that defendant's reasonable interpretation of its own Ordinance applies to plaintiff. Second, § 1983 is merely a vehicle used to allow victims of constitutional violations to obtain redress in federal court. See, e.g., Braley v. City of Pontiac, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). Having determined that plaintiff's constitutional violations do not survive summary judgment, a freestanding § 1983 also fails.

### V. CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is DENIED

22

and defendant's motion for summary judgment is GRANTED.  Counts I through VI are

DISMISSED WITH PREJUDICE.  Counts VII and VIII (the takings claim) are not ripe for

federal review and are therefore DISMISSED WITHOUT PREJUDICE.  Accordingly, this

case is over.

       SO ORDERED.


       S/Avern Cohn_____

      AVERN COHN
      UNITED STATES DISTRICT JUDGE


Dated:  January 25, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record
on this date, January 25, 2013, by electronic and/or ordinary mail.


       S/Sakne Chami_____

      Case Manager, (313) 234-5160